UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                            :

TRUSTEES OF THE NEW YORK CITY DISTRICT       :
COUNCIL OF CARPENTERS PENSION FUND,        :
WELFARE FUND, ANNUITY FUND, AND              :                22 Civ. 4886 (JPC)
APPRENTICESHIP, JOURNEYMAN RETRAINING,   :
EDUCATIONAL AND INDUSTRY FUND *et al.*,      :         OPINION AND ORDER
                                              :

                     Petitioners,           :
                                              :

           -v-                              :
                                              :
GENRUS CORP.,                              :
                                              :
           Respondent.          :
                                              :
----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        Petitioners Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; Trustees of the New York City Carpenters Relief and Charity Fund; the Carpenter Contractor Alliance of Metropolitan New York; and the New York City District Council of Carpenters have petitioned to confirm an arbitration award issued against Respondent Genrus Corp. (the "Petition"). Petitioners also seek to recover attorneys' fees and costs that they have incurred in bringing this Petition to confirm that award. The Petition is unopposed, as Respondent did not appear at the underlying arbitration hearing and has not appeared before this Court. For the reasons below, the Petition is granted, but with a reduction in Petitioners' request for attorneys' fees.

## I.  Background

### A.  Facts

Petitioners bring this action under section 301 of the Labor Management Relations Act of 1947 ("LMRA"), *as amended*, 29 U.S.C. § 185, to confirm and enforce an arbitrator's award (the "Award") rendered under a collective bargaining agreement involving Petitioner the New York City District Council of Carpenters (the "Union") and Respondent Genrus Corp.  Dkt. 1 ("Pet.") ¶ 1.  Petitioners Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated under the Employee Retirement Income Security Act of 1974.  *Id.* ¶ 4.  Petitioners Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).  Pet. ¶ 5.  Petitioner Carpenter Contractor Alliance of Metropolitan New York (collectively with the ERISA Funds and the Charity Fund, the "Funds") is a not-for-profit corporation.  *Id.* ¶ 6.  The Union is a labor organization and the certified bargaining representative for certain employees of Respondent. *Id.* ¶ 7.

Respondent is a construction firm which has contracted with the New York City Housing Authority ("NYCHA") for certain public projects.  *Id.* ¶ 9.  Around January 13, 2018, Respondent signed a Letter of Assent, *see id.*, Exh. A, binding itself to the relevant NYCHA project labor agreement (the "PLA"), *see id.*, Exh. B ("PLA").  Under the PLA, Respondent must "pay on a timely basis contributions on behalf of all employees covered by this Agreement to those established jointly trusteed employee benefit funds designated in Schedule A [of the PLA]."  PLA

Art. 11 § 2(A); Pet. ¶ 11.  The PLA also binds Respondent to the applicable collective bargaining agreement with the Union, to the extent that such terms do not conflict with other PLA provisions. *See* PLA Art. 2 § 4; Pet. ¶ 12.  Accordingly, Respondent was bound to the Independent Building Construction Agreement (the "CBA") with the Union.  *See* PLA at 78-82; Dkt. 1, Exh. C ("CBA"); Pet. ¶ 13.  Both the PLA and CBA require Respondent to send contributions to the Funds for all work performed by its employees within the trade and geographical jurisdiction of the Union.  *See* PLA Art. 11 §§ 2(A), 2(B); CBA Art. XV § 1; Pet. ¶ 15.  The CBA also requires Respondent to make its books and payroll records available for an audit upon the Funds' request so that the Funds can ensure that Respondent is making the necessary benefit fund contributions under the CBA. *See* CBA Art. XV § 1; Pet ¶ 16.

Besides those requirements, the PLA and CBA mandate Respondent's compliance with the Funds' Collection Policy.  PLA Art. 11 § 2(B); CBA Art. XV § 3; Pet. ¶¶ 17-18; *see id.*, Exh. H ("Collection Policy").  Under the Collection Policy, "[i]n the event that an employer refuses to permit a[n] . . . audit upon request[,] . . . the Fund Office shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period." Collection Policy § IV(12).

Petitioners requested an audit of Respondent's files from March 25, 2019 through May 30, 2021 to determine whether Respondent had paid the proper contributions for that period.  Pet. ¶ 22. With Respondent's consent, the audit was performed by an independent auditing firm.  *See id.*, Exh. J ("Award") at 2.  The audit revealed a principal deficiency of $2,005.26.  Award at 3; Pet. ¶ 23.  A dispute arose after Respondent refused to pay that amount. Pet. ¶ 24. Under the CBA,

"[s]hould any dispute or disagreement arise between the parties hereto . . . concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator."  CBA Art. XV § 7; *see* Pet. ¶ 19.  The CBA and the Collection Policy also provide that, should the Funds have to arbitrate a dispute or sue for unpaid contributions, the Funds have a right to collect: (1) the delinquent contributions; (2) interest on the unpaid contributions at the prime rate of Citibank plus 2%; (3) liquidated damages in the amount of 20% of the unpaid contributions or interest on the unpaid contributions, whichever is greater; (4) reasonable costs and attorneys' fees incurred by the Funds in collecting the delinquencies; and (5) other legal or equitable relief that the Court deems appropriate.  CBA Art. XV § 6; Collection Policy § V; Pet. ¶ 20.

Pursuant to the CBA, Petitioners began arbitration before Arbitrator J.J. Pierson. Pet. ¶ 25. Arbitrator Pierson held a hearing on February 25, 2022.  *See* Award at 2.  Respondent was notified of the proceeding and the claims against it.  *See* Pet., Exh. I; Award at 1.  But Respondent did not appear or request an adjournment or extension of time.  *See* Award at 2.  Arbitrator Pierson examined the evidence and rendered the Award on April 7, 2022.[1]  *Id.* at 3; Pet ¶ 26.  Arbitrator Pierson found that Respondent was deficient in remitting fringe benefit contributions to the Funds in violation of the CBA.  Award at 2.  Arbitrator Pierson ordered Respondent to pay the Funds $9,646.99, consisting of (1) the principal deficiency of $2,005.26; (2) liquidated damages of $401.05; (3) interest of $101.76; (4) audit costs of $2,873.75; (5) promotional fund contributions of $11.40; (6) late payment interest of $1,353.77; (7) attorneys' fees of $1,500; (8) arbitrator's fees of $1,000; and (9) court costs of $400.  *Id.* at 3; Pet. ¶ 27.  On April 13, 2022, Petitioners served

---

[1] The precise date when Arbitrator Pierson issued the Award is uncertain.  *Compare* Award at 3 (dated April 7, 2022), *with* Award at 4 (Arbitrator Pierson attesting that he "issued the above Award on April 8, 2022").  However, this discrepancy has no effect on the outcome of this case.

Respondent with a letter demanding payment and compliance with the Award via certified mail. Pet. ¶ 28; *see id.*, Exh. K.  As of the Petition's filing date, Respondent has paid no portion of the Award.  Pet. ¶ 29.

**B.  Procedural Background**

On June 10, 2022, Petitioners filed the Petition to confirm the Award, Dkt. 1, and an accompanying memorandum of law in support of the Petition, Dkt. 5.  Petitioners served Respondent with the Petition by personal service to the New York Secretary of State on June 14, 2022, Dkt. 7, and again on June 20, 2022 via overnight and electronic mail, Dkt. 9.  Respondent has neither submitted an opposition nor otherwise appeared in this action.

## II.  Discussion

**A.  The Arbitration Award**

**1.  Applicable Law**

"The LMRA establishes a federal policy of promoting industrial stabilization through the collective bargaining agreement, with particular emphasis on private arbitration of grievances." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quotations omitted).  "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," and "[o]nly a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted).

As a result, judicial review of an arbitration award is "limited to determining whether the arbitration proceedings and award met the minimum legal standards established by" the LMRA. *Nat'l Football League Mgmt. Council*, 820 F.3d at 532.  The Court "must simply ensure that the arbitrator was even arguably construing or applying the contract and acting within the scope of his

authority and did not ignore the plain language of the contract." *Id.* (internal quotation marks omitted).  Under this standard, "even if an arbitrator makes mistakes of fact or law, [a district court] may not disturb an award so long as [the arbitrator] acted within the bounds of his bargained-for authority." *Id.*  In other words, "[a]s long as the award draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice, it must be confirmed." *Id.* at 537 (internal quotation marks omitted).

If, as here, a petition to confirm an arbitration award is unopposed, courts generally treat the petition "as akin to a motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 109. Although the Court grants significant deference to the arbitrator's decision, an unopposed confirmation petition must "fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

### 2.  Analysis

Petitioners have adequately shown that there is no genuine issue of material fact precluding judgment in their favor confirming the Award.  Arbitrator Pierson found that Respondent was bound by the CBA, which requires it to remit timely fringe benefit contributions to the Funds. Award at 2; *see* CBA Art. XV § 1.  The CBA also provides for arbitration if a dispute occurs. CBA Art. XV § 7 ("Should any dispute or disagreement arise between the parties hereto, or between the Union and any Employer signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder . . . .").  Arbitrator Pierson observed that Respondent had "sufficient legal notice" of the arbitration proceeding yet failed to attend.  Award at 2.  Accordingly, Arbitrator Pierson "found the Respondent to be in default and proceeded *ex parte* to accept the testimony and evidence" submitted by Petitioners, *id.*, and concluded "based on substantial and credible evidence" that Respondent was liable for

$9,646.00, *id.* at 3; Pet. ¶ 27.  These findings adhered to the terms of the CBA and were well within the bounds of his authority.

The Court also finds, based on the undisputed evidence, that the Award is proper.  As noted above, the CBA and the Collection Policy provide that, should the Funds have to arbitrate a dispute or sue over unpaid contributions, the Funds may collect, along with the delinquent contributions: (1) interest on the unpaid contributions at the prime rate of Citibank plus 2%; (2) liquidated damages for 20% of the unpaid contributions or interest on the unpaid contributions, whichever is greater; and (3) reasonable attorneys' fees and costs incurred by the Funds in collecting the delinquencies.  CBA Art. XV § 6; Collection Policy § V; *see* Pet. ¶ 20.  In deciding the Award, Arbitrator Pierson received in evidence the audit report of Respondent's estimated deficiencies. *See* Award at 2.  "Although Petitioners have not presented this Court with copies of all the materials on which the arbitrator relied, there is no reason to doubt the arbitrator's interpretation of those materials."  *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. CEI Contractors Inc.*, No. 21 Civ. 7870 (JPC), 2022 WL 3225680, at *3 (S.D.N.Y. Aug. 10, 2022) (internal quotation marks omitted).  Moreover, "nothing suggests that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law."  *Id.* (internal quotation marks omitted).  The Court therefore confirms Petitioners' timely application for confirmation of the Award.

**B.  Petitioners' Application for Attorneys' Fees, Costs, and Post-Judgment Interest**

**1.  Applicable Law**

Petitioners request $504.50 in attorneys' fees and $77 in costs arising out of their efforts in bringing this action to confirm the Award.  Pet. ¶¶ 32-40; Dkt. 5 at 5-7.  Generally, "in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award," which section 301 of the LMRA does not provide.  *Int'l Chem. Workers*

*Union, Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (citations omitted). But a court may award attorneys' fees "[p]ursuant to its inherent equitable powers . . . when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (internal quotation marks omitted). "[W]hen a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Id.* (internal quotation marks omitted).

In determining whether a requested fee is reasonable, courts look to the total hours billed and the rates at which those hours were billed. "A reasonable hourly rate is what a reasonable, paying client would be willing to pay." *N.Y.C. & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16 Civ. 1115 (GHW), 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016) (internal quotation marks omitted). An attorney's hourly rate is considered reasonable when it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

To allow the Court to determine whether time was reasonably expended, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). These applications should exclude "[h]ours that are excessive, redundant, or otherwise unnecessary." *Id.* (quotations omitted).

## 2. Analysis

Respondent has failed to appear or defend this action and has not justified its failure to abide by Arbitrator Pierson's decision. *See N.Y.C. Dist. Council of Carpenters Pension Fund v. Angel Const. Grp., LLC*, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *3 (S.D.N.Y. Feb. 3, 2009) ("Here, Defendant has failed to appear or in any way defend this confirmation action, and thus it is axiomatic that Defendant has offered no justification for its failure to abide by the Award.").

And the CBA provides that if the Funds initiate judicial proceedings to collect delinquent contributions, and prevail in that litigation, the employer shall pay reasonable attorneys' fees and costs. *See* CBA Art. XV § 6(a)(4); Pet. ¶ 32. The Collection Policy similarly provides that attorneys' fees shall be assessed against a delinquent employer to cover time spent by counsel "in collection efforts or in enforcing the Board of Trustees' rights to payroll reviews and/or audits." Collection Policy § V(6); Pet. ¶ 33. Thus, the Court holds that an award of fees and costs is proper in this case.

In support of their application for attorneys' fees, Petitioners have submitted an invoice reflecting 0.7 hours of associate time, billed at $275 per hour, and 2.6 hours of legal assistant time, billed at $120 per hour. Pet., Exh. L ("Billing History"); *see id.* ¶¶ 36-38.[2] After reviewing Petitioners' counsel's time records, the Court first finds these 3.3 hours spent on this case to be reasonable and not duplicative.

The Court next turns to the requested hourly rates. The 0.7 hours of associate attorney time is attributed to Maura Moosnick, a 2021 graduate of Fordham University School of Law. *Id.* ¶ 36. As an associate, Ms. Moosnick has represented clients in similar matters twice before. *See Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Kaja Custom Builders LLC*, No. 22 Civ. 171 (VM), 2022 WL 987667, at *2 (S.D.N.Y. Mar. 31, 2022) (awarding Ms. Moosnick fees at a rate of $275 per hour); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Reliable Build, Inc.*, No. 21 Civ. 9332 (VM), 2022 WL 214389, at *2 (S.D.N.Y. Jan. 25, 2022) (same). However, several courts have awarded lower fees for more experienced attorneys at Ms.

---

[2] The Petition claims that Charles Virginia's "time was billed at a rate of $350 per hour for work performed in connection with this action." Pet. ¶ 35. But there are no entries for Charles Virginia in the Billing History. *See* Billing History. The Court therefore does not opine on his rates.

Moosnick's firm, typically between the range of $250 to $225 per hour.  *See, e.g.*, *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Land Cruising Props. Inc.*, No. 21 Civ. 7877 (KPF), 2022 WL 1125623, at *6 (S.D.N.Y. Apr. 15, 2022) (awarding Adriana R. Grancio, a 2016 law school graduate, fees at a rate of $250 per hour); *CEI Contractors Inc.*, 2022 WL 3225680, at *5 (same); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. William Somerville, Inc.*, No. 20 Civ. 8983 (PAE), 2021 WL 6065761, at *5 (S.D.N.Y. Dec. 22, 2021) (finding that "$225 represents the upper bound of prevailing rates in this District for associates similarly situated to" Marlie P. Blaise, who at the time had "2-3 years of experience"); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Eclipse Constr. Servs. Inc.*, No. 21 Civ. 7868 (GHW), 2021 WL 5567752, at *5 (S.D.N.Y. Nov. 26, 2021) (explaining that "$225 per hour for associates with similar experience [to Ms. Grancio] is a more appropriate rate"); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Earth Constr. Corp.*, No. 21 Civ. 1443 (JPC), 2021 WL 4975690, at *4 (S.D.N.Y. Oct. 25, 2021) (awarding Ms. Blaise fees at a rate of $225 per hour); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Piccini MNM, Inc.*, No. 19 Civ. 5258 (RA), 2021 WL 1791591, at *4 (S.D.N.Y. May 5, 2021) (awarding Ms. Grancio fees at a rate of $225 per hour).  Because Ms. Moosnick has only approximately one year of legal experience, the Court reduces her rate to $225 per hour for this case.

With respect to Abigail Frankel's fees as a legal assistant, the Court concludes that the requested rate of $120 per hour is reasonable.  *See Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. C K S Woodworks, Inc.*, No. 20 Civ. 2556 (JPC), 2021 WL 734959, at *5 (S.D.N.Y. Feb. 24, 2021) (awarding $120 per hour for legal assistant's work); *William Somerville, Inc.*, 2021 WL 6065761, at *6 (same).

Accordingly, Petitioners' request for attorneys' fees is granted, but at the hourly rates determined above.  Petitioners are therefore entitled to $469.50 in attorneys' fees.  The Court also grants Petitioners $77 in costs, near a standard cost to bring actions in this District.  *See CEI Contractors Inc.*, 2022 WL 3225680, at *5.  Lastly, the Court awards post-judgment interest "from the date of the entry of the judgment."  28 U.S.C. § 1961(a).

### III.  Conclusion

For the reasons above, the Petition is granted.  The Clerk of the Court is respectfully directed to enter judgment of $10,193.49, which consists of the arbitration award of $9,646.99, attorneys' fees of $469.50, and costs in the amount of $77.  Post-judgment interest will accrue at the statutory rate.  The Clerk of the Court is also respectfully directed to close this case and to enter judgment.

SO ORDERED.

Dated: August 18, 2022
       New York, New York

JOHN P. CRONAN
United States District Judge